The first case we're going to hear is 21-1328, U.S. v. Sanchez. Ms. Carruthers, are you ready? May it please the Court, Candace Carruthers, Assistant Federal Public Defender for Mr. Sanchez. The warrant affidavit in this case failed to establish a probable cause nexus between the Gutierrez home, where the police believed Mr. Sanchez did not reside, and a homicide that occurred a month earlier in a different city, which the police did not believe Mr. Sanchez committed. Excuse me. Can you turn it up a little bit? Yes, Judge. Thanks. The government alternatively asked this Court to affirm based on consent, but the District Court did not base its ruling on consent, and this was for good reason. Concerning the nexus, there was no additional evidence linking the gun to the Gutierrez home. The government's argument that a sufficient nexus existed because Mr. Sanchez was found there was exactly what this Court rejected in Rowland. In Rowland, the affidavit supplied a nexus. Well, did they even need an affidavit here given the fact that they had an equivocal consent? Yes, they did, Your Honor, because when the police indicated that they would not be acting on that consent, it limited the scope of the consent because no reasonable person would think that the police would search their home when they said they would wait for a warrant. And that's why probable cause was the District Court's basis for its ruling, but it was mistaken in finding probable cause. Of course, that wasn't exactly the circumstances here. It wasn't as though the police officers that were there just simply said, okay, we're not going to search the house, and then the occupant, Mrs. Gutierrez, didn't hear anything more. Even after they told her, we're going to get a warrant, she profusely suggested that they had the right to search, it was no problem. Did you like the keys to the garage? I mean, she was encouraging them to search. And then, even after she encouraged them to search, there was no real discussion. She just agreed, she and her grandson, to go to the station and talk to the police, and the officers stayed there. There was never any withdrawal of that consent. So they were there, and they were in the home, pursuant to that consent. Under these facts, Mrs. Gutierrez had no reason to withdraw her consent. The police had told her, or indicated by their actions when they don't go search, that they're going to be waiting, and so she has no reason to revoke that consent. It had already been limited. This case is different than those like Ortiz, where the defendant is watching on while the search occurs, so it makes sense for his silence to be held against him. And it's different from cases like Tucker, where the intention to further rely on that consent is made clear. In Tucker, we have an officer say, do not touch that during our investigation, after the consent. But what happens after our consent, is that the police officers decide to wait for a warrant. They decide to wait. Did they also say, we're not going to let anyone in that room? They did, and they did that because they believed they had authority to seize the hall, and they did not. They didn't have a warrant. They told her, and she didn't object to that. When the police make that statement, or decide to wait, it changes the... Not decide. Maybe I'm wrong about the record, but I thought the officers said to her, after she gave consent, and before she left, they said to her, we're not going to let anyone in that room. Did they not? They said... What did they say? Yes, I believe it's Wilson who testifies. The district court does make a finding that they were... About the room, but I don't believe that to be exactly Wilson's... Well, what was exactly what he said? Wilson, he testified that he indicated that they would be searching after they perceived a warrant. No, but didn't they also say something about not letting anyone in the room? And they did, and they did that because they told her they had authority for a warrant. No, no. Okay. You can't have it both ways, it seems to me. You're trying to get it both... Because the only reason that they found anything is they said they weren't going to let anyone in that room. Someone came in to get some personal items, and they said, we're going to watch you while you do that. Because they didn't want that room disturbed. And Ms. Gutierrez made very clear that... I should put this... The police made very clear they didn't want that room disturbed. So they went in the room with this person, and that's when they saw the gun. So what they did that led to discovering the gun, which was the basis of probable cause, was clearly within the scope of her consent. She knew about that. I think she consented to the whole search, but at least she consented to that. Tell me what I'm missing here. I think the analysis is a little different, Your Honor. I think that the circumstances changed, and that Ms. Gutierrez makes these statements, but it's up until... But the police never make any action on those statements. And a reasonable person would understand that interaction to say they're going to be waiting for a warrant. And that's why the district court made its ruling. Didn't she make it very clear that whatever they wanted to do was fine? But she had no reason to say anything else because... And we don't know what she could have done two hours later when the search occurs. She's not there. And an individual who consents has the right to withdraw or limit their consent, but two hours had passed when the search actually occurred. She doesn't have that opportunity. Withdrawal is exactly right. But absent a withdrawal, the consent continues. That's the rule. And the district court didn't make any findings that the consent was withdrawn. And you don't cite any authority suggesting that the police's continued presence, with her knowledge, even as she leaves, is somehow some kind of de facto withdrawal. I didn't see any authority on that point. The scope of consent is measured by what a reasonable person would understand between the exchange between that person and the officer. And so anybody in this circumstance, it's our position that we walk away thinking they're not going to search. They're going to wait for a warrant. They say they have probable cause. Okay, I think you're talking about two different things. You're talking about withdrawal of consent, and you're talking about what was the original scope of her consent. And did she withdraw that very broad scope? Nobody disagrees about that. She did not because she had no reason to. So she didn't withdraw it. She had no reason to because the police had already limited it. So the police limited her consent? Because they chose to wait for a warrant. And what authority do you point to for that? That just the standard for the scope of consent is the exchange between the parties and what a reasonable person would understand from that exchange. But also Tucker, you know, in that case, the officer said, we're going to need that, don't mess with that during our investigation. And so that was sufficient and distinguishable from this case. And just to touch on the nexus, Your Honors, there's no specific facts to make the gun to be more likely to be in that house. The evidence that the government supplies was 40 days old and not linked with a physical location. So it does not supply a nexus to the Gutierrez Hall. And there's no reason to think that Ms. Jensen would have been there as well. There are many messages showing that they were not. Are you challenging the sufficiency of probable cause, assuming they can use the gun? No, Your Honor. Okay, I wanted to make sure. Yes, no, Your Honor. But I think the proper analysis is what the district court ruled. He didn't rule based on consent because there are legal and factual ambiguities that make this case difficult to rule on that. Do things change when the police do not decide to act on that consent? Is it fair for Ms. Gutierrez not to have been home when the search actually occurs, with no ability to express or withdraw or limit her consent? Those are difficult legal and factual questions. And so the district court correctly based its ruling on probable cause. Now, he was mistaken that there was probable cause. But this court should reverse because the probable cause was lacking in the warrant. And if there are no further questions, I'll preserve the remainder of my time. Thank you. May it please the court. Marissa Miller on behalf of the United States. There are two separate issues of consent in this case. The defendant is talking about whether the police had Ms. Gutierrez's consent to perform a full search of the house without a warrant. That is not the consent that the government is relying on. Instead, our focus is on whether the police had consent to be inside Ms. Gutierrez's home. Not to search it, just to be present inside of it. And the reason that that's important is, as the district court correctly recognized, the search that happened here was a plain view search. And when we have a plain view search, the main question, perhaps the only question, is whether the officer who saw that evidence in plain sight had a legal right to be standing where he was when he saw it. So consent is still the key to this case. But the question we're asking the court to focus on is whether the deputy who saw the gun was inside the house with Ms. Gutierrez's consent when that happened. I think viewed from this perspective, the case becomes fairly straightforward. And that's because the court below specifically found that the deputy who saw the gun had Ms. Gutierrez's permission to be where he was when that happened. After all, Ms. Gutierrez invited the officers inside her home. She encouraged them to walk around the property freely. And she never asked them to leave or otherwise objected to their continued presence. In fact, Ms. Gutierrez made clear repeatedly, both during the incident itself as well as the evidentiary hearing below, that her intention was always to cooperate with the police in full. I welcome the court's questions. So I guess I'm still a little bit unclear. You're suggesting that this was not pursuant to a search then? Our position is that this was not like a consent search, right? We're not relying on the fact that Ms. Gutierrez said, you don't have to get a warrant, please feel free to search. Do you agree that that consent was essentially withdrawn? Because she did give consent to search, broad consent to search. I don't think that consent was withdrawn. And I think the court could affirm on that alternative basis. That's what I'm asking. And I guess I understood that to be part of your argument in your briefing, was that that was a basis, that they were essentially conducting a search. By their presence there and their following the individual, that they were essentially conducting a search that had been consented to. Our position is slightly different, although I think both positions arguably are grounds on which to affirm. But I think what the district court did was say, the officer saw this gun in plain sight. How did he get where he was when that happened? And the question is, was he allowed to be inside the house at that point? And then the question is really, was Ms. Gutierrez okay with the police remaining inside her house and walking around the house, as opposed to not just consent to be inside the house, consent to perform a full search? So the case is a little bit different. It would be a little bit different. Well, how do we know that? There wasn't really any findings of fact on that by the district court. I mean, the court clearly found she gave a broad consent and that consent was not withdrawn. Did it ever find that she gave consent for them to remain in the house, despite their declaration that they were not going to perform a search? I mean, I would point the court to Volume 3, pages 259 to 263, and I think that while that is slightly separate from the court's factual findings, it's where the court discussed this issue more in depth with counsel  based on the testimony from the police officers, that when the deputy who saw the gun saw it, he was still inside the house with Ms. Gutierrez's permission. But not verbal permission to remain inside the house. There was never that, was there? No. I mean, I think it obviously is a sort of implied consent, right? And the example I like to use is, you know, your friend invites you over to a dinner party. While they're cooking, they have to run to the grocery store to get something. And, you know, they leave without saying anything. We don't automatically assume that their consent to have us in their house has been withdrawn. Rather, I think by leaving the scene once the police officers were inside there, especially after making it very clear to the police officers that she wasn't going to impose any limits on their movement, that she really had no objection to them being inside her house, that consent continued. Especially under this rule that we see in Tucker, that we see in Ortiz, that, you know, the consent has to be withdrawn or revoked rather explicitly. That's where it kind of gets confusing to me, because you keep referring back to the fact that she hadn't withdrawn this consent. And we're talking about consent to search, and not some kind of separate consent to remain in the house, despite the fact that the officers said they weren't going to search. Sure. So, you know, I think Tucker and Ortiz could be applied to the consent to search, but I do think also they're cited for the general principle that that kind of consent, once given, has to be withdrawn by the defendant. So it applies, I would say, equally to this idea of, you know, was Deputy Aligarh allowed to remain in the house after she left, versus was he allowed to conduct a top-to-bottom search of the house after the officers told Ms. Gutierrez that they were going to wait to get a warrant? Well, what was the language of the consent? Did she say, I consent to search, or was it something much broader? Did she say, you can do what you want, this house is yours, et cetera? What was her exact language? Certainly. So there's obviously a lot of testimony both from Ms. Gutierrez and the police officers, but, you know, my summary would be that essentially she said record sites would be better than my personal summary. Well, didn't she say, quote, they were free to search anything on the property that they wanted to include any of the vehicles and a detached garage? Yes. She actively hands them the keys to her garage and says, I have nothing to hide, I want to cooperate. And the judge found that was voluntary? The judge found that was voluntary. What more do you need? Would the judge say anything about it being withdrawn? No, Your Honor, he didn't. And I think that, you know, there is nothing more you need, and that's essentially the basis on which the district court resolved this issue, is that the consent was there, it was still valid, and, you know, while the district court did address this probable cause nexus argument, it was an argument in the alternative. The basis for the court's decision was consent. Would you address the, if we disagree with you, how you obtain, without the gun, how do you obtain a nexus to the house, which is nothing? Yes, Your Honor. Between the criminal activity and this house. I believe that the nexus comes from the defendant's presence in the house, right? I would think of it as the probable cause attaching to the defendant, based on all of this evidence that we have, that the defendant is carrying this gun on him. And what evidence is that? You've got a Facebook message from a month before from your old friend saying, you know, or saying he had the gun and he possessed it, a month before. Not that he had the gun in mom's house, that he lived in mom's house, that he was carrying it a month later, nothing. What else do you have? Certainly. So I do think that the Facebook messages do have quite a bit of import, because there are two of them, they're a week apart, and then we have this murder that was committed with a similar gun, which demonstrates that this man is in continuing possession of a firearm. But I also think that the fact that this happened a month ago. Has that connected to the house still? It's connected to Mr. Sanchez, right? And I think the probable cause, think about it from law enforcement's perspective, right? Okay, we're looking for a murder weapon. There are three possible places it could be. It could be completely destroyed, hidden in a dumpster somewhere. We don't have any evidence that that is the case, right? So that never factors into the probable cause analysis. I mean, there's always the theoretical possibility that the evidence that we've just received information about has been destroyed. And so we don't really consider that. So then, okay, we're looking for a gun. Where might this guy keep a gun? Well, he could keep it at his residence. But in this case, A, we don't have any evidence that the defendant keeps it at his residence. Do we even have evidence of what his residence is? We don't. And I think that actually strongly supports the fact that the defendant would be carrying it on himself because the evidence in the record indicates that he did not have a permanent residence, right? And so if you are carrying a gun and you're transient, you're moving from different people's houses, most likely you're going to bring that gun with you, right? So lots of inferences from a couple of direct messages, right? I would say a lot of them are common sense inferences too about, you know, just to the extent that we say drug dealers are likely to have evidence of drug distribution in their homes, it's very much the same sort of common sense inference about where this evidence might be located. I do all think Bigelow is fairly clear that, you know, there are certain factors to look at. All of those factors, I think, support this idea that someone we have, you know, prima facie evidence to believe is a felon in possession is, in fact, going to be in possession of that weapon, especially when we have no evidence to the contrary. And I think Bigelow makes clear that that location nexus, it doesn't have to be supported by a lot. You know, in most cases, it really is going to be common sense inferences about where this type of evidence might be stashed. We rarely have someone saying, I know you're looking for a murder weapon. I believe that it is in the defendant's mom's basement. You know, most of the time it's, we're looking for a murder weapon. It's probably in the defendant's house. That's where he would keep it if he hasn't destroyed it. I did also want to address the staleness argument too, because I think one of the important parts there is to recognize that several of those days really shouldn't be counted strongly against the probable cause. And that's because the defendant was essentially avoiding law enforcement during this period. And so law enforcement does believe that he was carrying a gun for at least a week, probably many weeks in December. And then when the police start looking for him, they're unable to find him for two to three weeks. And so that doesn't make the information stale necessarily, or at least if it does, that's not a factor that we should take into account because it allows defendants to avoid law enforcement as much as possible so that when, you know, we're doing the probable cause analysis after we've apprehended the criminal, then the information is stale. I also think that, you know, in the context of felon in possession 30, 40 days the previous month really isn't that much time. I think that, you know, information certainly does become stale. If this had been a year ago, it would certainly be a very different case. Well, but even under those circumstances, they had permission to be in the house. This woman shows up looking for a dog leash. They want to make sure that nothing is going to be taken. And so there's nothing wrong with them following her around as she looks for the leash, whether it was six months or a year ago. And she opens the drawer to get the leash and lo and behold, there's the gun. Now, what more is needed at that point? Your Honor, I would say that there's not more that's needed. And that allows you to bring the discovery of the gun into the probable cause analysis to support the search warrant. At that point, you very obviously have probable cause to believe that they're going to find a gun there based on the fact that they have in fact seen a gun there. If the court has no further questions, I'm happy to see the remainder of my time and I would ask the court to affirm. Thank you. Ms. Carruthers, do you wish to go? No. Thank you. Thank you, counsel, for your presentations. Case is submitted. No, she said she didn't. You've got some time if you wanted. Thank you.  We'll turn to our next case on the docket.